OCTOBER AND NOVEMBER TERM, 1884, No. 37.    OCTOBER 29, 1884.

# Mundorff *et al. v.* The Board of School Directors of Kilbuck Township.

By agreement, not under seal, a board of school-directors contracted with O for the erection of a school-house for the sum of $5,970, to be paid to O on the completion of the building within the time specified, and, if not so completed, O to forfeit ten dollars per day for each day it remained uncompleted. The agreement further provided that " the said school-board agrees to pay all bills for material and labor when so ordered by said O, but twenty-five per cent. of all bills to be kept back until completion of the building."

O bought lumber upon the faith of the agreement, which he showed at the time of the purchase.

*Held* in a suit by the vendors against the board that there was no privity of contract between them, and that the Court was clearly right in ordering a compulsory non-suit.

[Mundorff *et al. v.* The Board of School Directors of Kilbuck Twp.]

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Common Pleas, No. 2, of *Allegheny County.*

Case by G. A. Mundorff and A. S. Mundorff, trading as G. A. & A. S. Mundorff, against The Board of School-Directors of Kilbuck Township, to recover $372 67 for window-frames and finishing-lumber, claimed to have been furnished the defendants for use in building a school-house under their control and management.

On the trial the plaintiffs showed the following facts :

The plaintiffs were engaged in the manufacture of window-frames and other house-furnishing lumber in the city of Pittsburgh.

On May 27th. 1881, the defendants made a written contract, not under seal, with A. G. Oakley, for the building of a school-house, according to certain plans and specifications, the house to be finished in four months from the date of the contract, or a forfeiture of ten dollars per day to be paid for each day it remained uncompleted afterwards. In consideration whereof the school-board agreed to pay Oakley, upon the completion of the building within the time specified, the sum of $5,970, in full payment thereof. The agreement also provided, as follows : "The said school-board agrees to pay all bills for material and labor, when so ordered by said A. G. Oakley, but twenty-five per cent. of all bills to be kept back until completion of the building."

In September, Oakley came to the plaintiffs at their place of business, and showed them his contract with the school-board, and said : "To show you it is all right, I have an article of agreement that states that the school-board will pay for all lumber and material as it comes on the ground by me O K-ing the bill, and I am directed to come here and purchase it, or to purchase the lumber. He didn't say to come to our place to purchase it, but was directed to purchase it." The plaintiffs testified that they agreed to furnish the materials ordered, and delivered the same "upon the strength of the school-board, and upon that writing and no other," "knowing Oakley was not responsible for a dollar." Oakley testified that "the school-board was to pay all bills on my order. I was to O K the bills, and the school-board was to pay them ; that was what I told him (Mr. Mundorff) at the time." The plaintiffs delivered, at the school-house, material to the amount of $819 67. Two bills, one for $277

and one for $319, were made out—"A. G. Oakley, bought of Mundorff,"—were given to Oakley, marked O K by him, and, on presentation to the school-board, seventy-five per cent. of each bill was paid to plaintiffs by the treasurer's checks, one dated October 15, 1881, for $205 75, and on November 8, 1881, for $239 25. The plaintiffs continued the delivery of material until November 16, 1881, when the balance remaining unpaid (including $149, twenty-five per cent. of the first two bills retained by the board under the contract with Oakley,) amounted to $372 67. Oakley gave an order to the plaintiffs, December 2, 1881, which they presented to the treasurer of the board. It was refused. In February, 1882, the school-house being still uncompleted, the board declared the contract with Oakley at an end, and had the building finished by other parties. At this time it was shown that about $192 worth of plaintiffs' material was upon the ground at the school-house, and this was used under the direction of the board in finishing it.

Defendants moved the Court to grant a compulsory non-suit against plaintiffs, for the following reasons:

*First.* That, under all the evidence offered, no privity of contract has been shown between plaintiffs and defendants, and plaintiffs cannot recover.

*Second.* That plaintiffs, having offered the agreement between defendants and the contractor Oakley, as the basis of their right to recover, they are bound thereby, and have no legal claim thereunder against the defendants.

*Third.* That the defendants have a right and ownership in all material delivered to the new house under their agreement with Oakley; the plaintiffs have no claim therefor under the law against defendants.

The Court entered judgment of compulsory not-suit, which, on motion and argument, it refused to take off; whereupon, plaintiffs took this writ, assigning for error the action of the Court in entering the judgment of compulsory non-suit, and in refusing to take it off.

*D. B. Maxwell* and *J. S. Ferguson* for plaintiffs in error

The insertion in the contract of the covenant by the defendants that they would pay for all material was not, in any way, necessary for the protection of the school-board. It was certainly put in the contract for a purpose. In view of the law preventing the filing of mechanics' liens, and the fact of Oakley's insolvency, the purpose becomes

manifest. It was to give Oakley a credit which he otherwise could not have had. With us it served its purpose, and the school-board, having armed Oakley with its written declaration that it would pay us, we now ask that it shall be compelled to do so. Its actions were consistent with this purpose. Our first bill amounted to $277. Oakley certified the bill to be correct, and the school-board paid, not Oakley, but Mundorffs, by drawing its check or warrant to their order. So with the second bill. The unpaid portion of the bill, therefore, was furnished by Mundorff upon the faith of the declaration of the contract, and a course of dealing in exact accordance with that declaration.

But, if we cannot recover the whole of our bill, why should we not recover $192 of it? That much of the material was at the building unused when the school-board took the contract off Oakley's hands. It was not paid for, as the school-board well knew. Under the evidence, it was not sold to Oakley. He, therefore, took no title to it. If he sold it to the school-board, he sold what did not belong to him, and the school-board, knowing, at least, that it was not paid for, took it and used it. The title remained in us.

*Henry A. Davis* and *D. D. Bruce* for defendants in error.

The plaintiffs had notice, by the written contract, that any lumber furnished by them must be furnished to Oakley; that the school-board could not assume to pay any bills to them unless "when so ordered by said A. G. Oakley;" that they could then only pay seventy-five per cent. of the amount of the bill, and that the remaining twenty-five per cent. was contingent on the completion of the building by Oakley.

Oakley, under his contract, was to furnish all labor and material. He was not bound to O K any bills, and any lumber furnished by him on his contract to the schoolhouse belonged either to him or the school-board, and there is no privity between the board and any third party furnishing either labor or materials except that created by the contract, where they are to pay seventy-five per cent. when ordered to do so, and the balance on the completion of the house; and any lumber which might have been on the ground unused by Oakley at the time he threw up the job, belonged to Oakley, had been sold and delivered to him, and he alone could claim the value of it, or claim

credit for it in any settlement he made with the school-board about abandoning the contract.

NOVEMBER 10TH, 1884.—PER CURIAM : There was no privity of contract between these parties. The school-directors contracted with Oakley only. The whole sum for which he was to build the school-house was to be paid to him, with the single qualification that, when ordered by him, they would pay all bills for material and labor. He did not order them to pay these bills in contention. The Court was clearly right in ordering a compulsory non-suit and in refusing to take it off.

Judgment affirmed.